Michael Dieni
Assistant Federal Defender
FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA
601 West Fifth Avenue, Suite 800
Anchorage, Alaska 99501
(907) 646-3400

Attorney for Defendant

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>vs.<br>JOHN SHELDON ROSS,<br>Defendant. | Case No. 1:03-cr-0005-JKS<br><br>DEFENDANT'S DISPOSITION BRIEF, *Filed on Shortened Time* |

Defendant, John Sheldon Ross, by and through counsel Michael Dieni, Assistant Federal Defender, submits his brief in aid of the disposition hearing now set for Thursday, October 11, 2007, in Anchorage. Mr. Ross has admitted two violations, neither of which involved an intent to commit new criminal violations. For the reasons set forth below, Mr. Ross will request a final disposition of eight months to serve and termination of supervision.

*1. Background information*

More than four years ago, on September 12, 2003, this court sentenced Mr. Ross to 18 months for the offense of mail theft, a Class C felony. The court ordered

that Mr. Ross also serve three years of supervised release upon completion of the 18 month sentence. At the time of sentencing, the court placed Mr. Ross at a relatively low offense level of 8, but with a high criminal history category of VI, for a guideline range of 18 to 24 months. The final sentence, pre-*Booker*, was 18 months, the low end of the then mandatory guideline range.

The current offense is the only felony ever incurred by Mr. Ross. He has a lengthy history of misdemeanor conduct, most of which occurred in the 1980s and 1990s. It can be characterized as a great deal of disorderly and driving related conduct.

Since this offense occurred in May 2003, well over four years ago, Mr. Ross has incurred no new criminal convictions. He was released to supervision in or about September 2004. Beginning about six months later, his history of drug and alcohol issues re-emerged. The record shows ongoing failure in this area.

To his credit, he has maintained employment in Juneau and has been relatively stable. The disorderly conduct, violence, and theft issues that have plagued him have apparently abated. There is nothing about the current violation conduct that suggests that he has become an increased risk of danger to the community.

The two violations now before the court as the primary basis for the present petition are his possession of firearms and failure to pay restitution. They are addressed in turn.

*2. The gun violation is relatively non-criminal and mitigated*

As explained in the petition affidavit, the guns belonged to Mr. Ross's girlfriend. Mr. Ross had been staying in a room with her at a house and the guns had

previously been removed from the house to accommodate him. Apparently, the two got into an argument and he left the house. While he was away for a few days, she regained possession of the guns. He then returned to the house, which contained his things and was his only place to stay in Juneau at the time, and the guns were there. At no time did he exercise any control over the guns. The guns had been there for less than ten days as of July 30, 2007, the time the probation officer found the guns in the house. All of the guns were long guns, designed for hunting. None of them were loaded. There is no reason to believe the guns had any relationship to any criminal activity.

*3. Restitution failure mitigated by relative poverty*

The restitution failure is mitigated by the circumstance that Mr. Ross never had more than a small subsistence level income. The allegation is that he had not paid restitution since June 2006. It should be noted that he has been on supervision since September 2004. It is not clear why restitution stopped then. It is clear that Mr. Ross was not making very much money to make his ordinary expenses. From July through October 2006, Mr. Ross worked as a part-time dispatcher for a cab company. According to monthly reports kept by the probation officer, which are backed up by employment records, Mr. Ross's total take-home pay during these months was as follows:

| | |
|---|---|
| July 2006: | $1,419 |
| August 2006: | $1,283 |
| September 2006 | $1,245 |
| October 2006 | $1,135 |

In October 2006, Mr. Webster attempted to supplement his income with a second job, at a liquor store. For a few months, he made more money:

| | |
|---|---|
| November 2006 | $1,943 |
| December 2006 | $1,474 |

In January 2007, Mr. Ross found that he could not maintain both jobs and lost his cab company job. His income for that month plummeted:

| | |
|---|---|
| January 2007 | $ 762 |

In February 2007, a petition to revoke was filed based upon drug and alcohol issues, and Mr. Ross was in jail for awhile. He got out and resumed working at the cab company.

| | |
|---|---|
| February 2007 | $ 196 |

In March 2007, Mr. Ross went to a 60-day residential drug and alcohol treatment program, and he only was able to work a little bit during March, and he had received a few small bits of money elsewhere that was reported as follows for April.

| | |
|---|---|
| March 2007 | $ 461 |
| April 2007 | $ 429 |

In May, Mr. Ross worked a bit for the cab company, and than resumed work full time:

| | |
|---|---|
| May 2007 | $ 162 |

In June he returned to working full time.

| | |
|---|---|
| June 2007 | $2,062 |

No records exist after June 2007, and it is reported that Mr. Ross had no employment in August or September 2007.

The end result of all of this is to show that Mr. Ross was making no more than a survival wage during most, if not all, of the time frame relevant to the current violation conduct. Mr. Ross agreed to the violation because he readily admits he should have made some, at least token, contribution to restitution. It is clear, however, that his failure to do so is somewhat mitigated by facts showing that he was barely making ends meet.

*4. The violation conduct supports a mitigated disposition no greater than the range suggested for a "C" violation*

Given the facts above, both of these violations are mitigated. Because of Mr. Ross's extensive misdemeanor history, he is a category VI, and because of the nature of the firearm violation, the guidelines deem the violation a B violation (versus a C). At category VI, a full-fledged B violation carries a recommended guideline of 21 to 27 months.

This number is too high for a variety of reasons. Foremost, it should be noted that Mr. Ross, though failing to stay away from drugs (mostly marijuana), has attempted to maintain a stable lifestyle that includes working and living in one place. His criminal history – all misdemeanors – is over-represented.

The firearms violation was technical in nature. It is the result of co-occupancy, not an intent on his part to violate the law. With reference to the spirit of the guidelines, it would make sense to treat this violation, at most, as if it were a "C" violation, not a "B." As a "C" violation, the guidelines would recommend a range of 8 to 14 months.

The 8 to 14 month range stands in far greater proportion to the underlying offense conduct, which drew a sentence of only 18 months. Mr. Ross's downfall on supervision has more to do with his historic problems with substance abuse than anything else. The totality of the conduct certainly does not warrant a sentence greater than the sentence first issued by the court back in September 2003.

DATED this 10th day of October, 2007.

Respectfully submitted,

FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA

/s/ Michael D. Dieni
Assistant Federal Defender
Alaska Bar No. 8606034
601 West 5th Avenue, Suite 800
Anchorage, AK 99501
Ph: (907) 646-3400
Fax: (907) 646-3480
mike_dieni@fd.org

Certification:

I certify that on October 10, 2007, a copy of the foregoing document, with attachments, was served electronically on:

Thomas C. Bradley, Esq.

/s/ Michael D. Dieni